## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PHILLIP MICHAEL CARTER, Individually and | § | Case No.: |
| d/b/a NORTH FORTY DEVELOPMENT CAPITAL | § | |
| ACCOUNT, BOBBY EUGENE GUESS, RICHARD | § | |
| GREGORY TILFORD, NORTH-FORTY | § | |
| DEVELOPMENT LLC, NORTH FORTY | § | |
| DEVELOPMENT, LLC, TEXAS CASH COW, LLC, | § | |
| f/k/a TEXAS CASH COW INVESTMENTS, LLC, | § | |
| and TEXAS FIRST  FINANCIAL, LLC, | § | |
| | § | |
| Defendants, and | § | |
| | § | |
| FRISCO WADE CROSSING DEVELOPMENT | § | |
| PARTNERS, LLC, MCKINNEY EXECUTIVE | § | |
| SUITES AT CRESCENT PARC DEVELOPMENT | § | |
| PARTNERS, LLC, CHRISTIAN CUSTOM HOMES, | § | |
| LLC, and DOUBLE DROPTINE RANCH, LLC | § | |
| | § | |
| Relief Defendants. | § | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendants Phillip Michael Carter ("Carter"), individually and d/b/a North Forty Development Capital Account ("North Forty Capital"), Bobby Eugene Guess ("Guess"), Richard Gregory Tilford ("Tilford"), North-Forty Development LLC ("North-Forty"), North Forty Development, LLC ("North Forty Delaware"), Texas Cash Cow, LLC f/k/a/ Texas Cash Cow Investments, LLC ("Texas Cash Cow Delaware"), and Texas First Financial, LLC ("Texas First") (collectively, "Defendants") and Frisco Wade Crossing Development Partners, LLC ("Frisco Wade"), McKinney Executive Suites at Crescent Parc Development Partners, LLC

("McKinney Suites"), Christian Custom Homes, LLC ("CCH") and Double Droptine Ranch, LLC ("Double Droptine Ranch") (collectively, "Relief Defendants"), and would respectfully show the Court as follows:

## SUMMARY

1.      Between approximately May 2015 and February 2017, Carter, a Texas-based real estate developer, raised at least $44 million from over 270 investors in several states, most residing within the Northern District of Texas, in unregistered securities offerings through materially misleading statements and omissions.  Carter then misappropriated investor funds to pay off personal tax liens, fund his lifestyle, and make Ponzi payments to investors.

2.      Carter; Guess, a Texas-based investment manager; and one of Guess's employees, Tilford, sold short-term, high-yield promissory notes issued by a number shell companies that were misleadingly named to confuse investors.  Carter, Guess, and Tilford told investors they were investing in Carter's real estate development companies and that their investments were backed by hard assets from legitimate real estate development projects.  In reality, the trio enticed people to invest in shell companies with names that were nearly identical to the names of Carter's *actual* real estate companies, but with no underlying assets.  In addition, Carter, Guess, and Tilford made a number of other materially false and misleading statements while soliciting investors.

3.      Although Carter did, in fact, develop some real estate projects, he also misappropriated more than $1.2 million of investor funds to pay off a personal IRS tax lien, make Ponzi payments to some investors, and operate the Double Droptine Ranch, his out-of-state hunting ranch.

4.      Carter, Guess, and Tilford repeatedly touted investment in the real estate development projects to prospective investors as "low risk," but never revealed to investors that they actually relied on the success of each link of a long chain of real estate development projects for repayment.  Because Carter misused investor funds for unrelated purposes, because of undisclosed risks inherent in Carter's real estate projects, and finally because he was indicted on Texas criminal securities fraud charges on November 6, 2018, Carter's house of cards collapsed.  Carter now owes investors more than $45 million.  Since his indictment, Carter has been unable to close sales of real estate properties, the proceeds of which he needs to continue financing real estate developments.  On January 16, 2019, he transferred control of several entities, including North-Forty and all of the Relief Defendants, to a new manager who specializes in restructuring distressed companies.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this action under Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]; and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].  Venue is proper because a substantial part of the events and omissions giving rise to the claims occurred in the Northern District of Texas.

## PARTIES

6.      Plaintiff is an agency of the United States government.

7.      Defendant Carter, age 44, is a resident of Frisco, Texas.  Carter is a real estate developer who, at all times relevant to this Complaint, controlled Texas Cash Cow Investments, Inc. ("Texas Cash Cow"), North-Forty, and North Forty Capital.  He was also the trustee of the Stillwater Trust, which was the manager of North-Forty and other entities he controlled.  When

subpoenaed to testify in the investigation that preceded the filing of this lawsuit about the allegations in this matter, Carter invoked his Fifth Amendment right against self-incrimination and refused to testify.  On November 6, 2018, a Texas state court grand jury indicted Carter in connection with the conduct described herein, charging him with securities fraud, misapplication of fiduciary property, money laundering, and unregistered securities activities.

8.      Defendant Guess, age 67, was a resident of Van Alstyne, Texas at all times relevant to this Complaint, but is currently incarcerated by the State of Texas.  Guess managed and/or controlled Texas First, Texas Cash Cow Delaware, and North Forty Delaware.  He was also a salesperson for Texas First.  The Texas State Securities Board ("TSSB") issued a cease-and-desist order against Guess in August 2016.  On July 4, 2018, Guess pleaded guilty to state securities fraud and was sentenced to 12 years in prison.  Prior to the relevant period, Guess previously held several securities licenses, including Series 6, 26, 63, and 66.

9.      Defendant Tilford, age 60, is a resident of Fort Worth, Texas.  Tilford worked as a salesperson for Texas First.  On July 11, 2012, he pleaded guilty to failing to file a tax return, and was sentenced to one year in jail and was ordered to pay restitution of $453,547.  On November 6, 2018, a Texas state court grand jury indicted Tilford in connection with conduct described in this Complaint, charging him with securities fraud and unregistered securities activities.

10.     Defendant North-Forty is a Texas limited liability company with its principal place of business in Frisco, Texas.  North-Forty was formed on or about May 9, 2014 by the Stillwater Trust.  Until very recently, Carter controlled North-Forty through his position as trustee of the Stillwater Trust. North-Forty is not registered with the Commission in any capacity.

11.     Defendant North Forty Capital is apparently a bank account owned and controlled by Carter. After the criminal authorities issued a cease-and-desist order against Texas First and executed a search warrant at Texas First, Carter began signing promissory notes on behalf of North Forty Capital. North Forty Capital is not registered with the Texas Secretary of State or with the Commission in any capacity.

12.     Defendant North Forty Delaware is a Delaware limited liability company formed by Guess with a principal place of business in Frisco, Texas. The company issued promissory notes to raise money for Carter, Texas Cash Cow, and North-Forty. North Forty Delaware is not registered with the Commission in any capacity.

13.     Defendant Texas Cash Cow Delaware is a Delaware limited liability company formed by Guess with its principal place of business in Frisco, Texas. A Certificate of Amendment was filed on July 22, 2015, changing the name from Texas Cash Cow Investments, LLC to Texas Cash Cow, LLC. Texas Cash Cow Delaware issued promissory notes to raise money for Carter and Texas Cash Cow.

14.     Defendant Texas First is a Texas limited liability company with its principal place of business in Frisco, Texas. Guess formed Texas First in 2013, and served as the company's president and manager. In August 2016, the criminal authorities executed a search warrant at Texas First's offices. Also in August 2016, the TSSB issued a cease-and-desist order against Texas First prohibiting the company from, among other things, selling securities. Texas First is not registered with the Commission in any capacity.

## RELIEF DEFENDANTS

15.     Frisco Wade Crossing Development Partners, LLC ("Frisco Wade"), is a Texas limited liability company with its principal place of business in Frisco, Texas. Carter formed

Frisco Wade in October 2015 to hold certain real estate property purchased using investor funds. On January 16, 2019, Carter transferred control of Frisco Wade to a new manager who specializes in restructuring distressed companies.

16.     McKinney Executive Suites at Crescent Parc Development Partners, LLC ("McKinney Suites"), is a Texas limited liability company with its principal place of business in Frisco, Texas.   Carter formed McKinney Suites in October 2015 to hold certain real estate property purchased using investor funds.  On January 16, 2019, Carter transferred ownership and control of McKinney Suites to a new manager who specializes in restructuring distressed companies.

17.     Christian Custom Homes, LLC ("Christian Custom Homes"), is a Texas Limited Liability Company with its principal place of business in Frisco, Texas.  Carter formed Christian Custom Homes in October 2012.  Carter operated Christian Custom Homes as a vehicle to develop residential real estate projects.  Christian Custom Homes received more than $8 million of investor funds.  On January 16, 2019, Carter transferred ownership and control of Christian Custom Homes to a new manager who specializes in restructuring distressed companies.

18.     Double Droptine Ranch, LLC ("Double Droptine Ranch"), is a Texas Limited Liability Company with its principal place of business in Ringling, Oklahoma.  Carter and his wife formed Double Droptine Ranch, which operates a thousand-acre exotic game hunting ranch, in February 2010.  Carter transferred more than $1.3 million of commingled investor funds to Double Droptine Ranch.  On January 16, 2019, Carter transferred ownership and control of Double Droptine Ranch to a new manager who specializes in restructuring distressed companies.

## FACTS

### I.   Sale of Securities

19.   Carter initiated this scheme in the summer of 2015 after meeting Guess.  At the time, Guess and his company, Texas First, were selling short-term, high-yield promissory notes to raise money for entities unrelated to this Complaint.  Guess recruited investors by running radio commercials touting high interest rates for investments "backed by hard assets." He used a staff of salespeople, including Tilford, to pitch the investments to prospective investors.  When Carter and Guess met, Guess was involved in a different fraudulent investment scheme with another company.  Guess eventually pleaded guilty in July 2018 to one count of securities fraud in connection with that scheme, and is currently serving a 12-year prison sentence.

20.   Guess agreed to help Carter raise funds for two of Carter's real estate development companies, Texas Cash Cow and North-Forty.  Guess generally solicited investors while Carter developed the real estate projects.  However, Carter also met with investors and closed sales, assuring them that investment in North-Forty was not risky and that if one North-Forty project encountered delays, then investors would be repaid from other projects North-Forty had under development.

21.   Guess and Texas First ran advertisements on Dallas-area radio stations touting investments with nine-percent annual returns, no market risk, and backed by "hard assets." When individuals called about the radio ads, Guess and Tilford specifically pitched investments in Carter's companies.  Carter, Guess, and Tilford also hosted investor seminars in which they touted the benefits of investing in Carter's entities.

22.   Carter, Guess, and Tilford each personally told investors they would be investing in Carter's real estate companies; the investments had low risk; investor funds would only be

used for North-Forty business purposes; and the investments were backed by hard assets owned by Carter's companies.

23.     Carter, Guess, and Tilford provided prospective investors with a brochure describing Carter's background and his real estate business.   At some seminars, they also provided investors with a portfolio summary (the "Summary"), which identified, among other things, Carter's background, real estate projects, projected revenues, and total development value.  Carter provided the information to Guess and had final approval before Guess and Tilford provided these materials to investors.

24.     The Summary and brochures included numerous false statements about Carter's background and professional experience.  For example, Carter claimed that he had (1) a chemical engineering degree from the University of Virginia, (2) a close personal relationship with an identified "investment mogul" and author, and (3) worked for Texas Instruments's world-wide construction team.   However, UVA has no record of Carter ever attending the school, the investment mogul/author denies ever having any relationship with Carter, and Texas Instruments has confirmed that Carter never worked there.   These statements were material to investors in making decisions about whether to invest in Carter's projects.

25.     Carter, Guess, and Tilford sold promissory notes that offered one- or two-year terms, with a guaranteed annual interest rate of at least nine percent. The trio represented to investors that they would be investing in Carter's real estate companies and would receive repayment of their investment, plus interest, from the profits of Carter's real estate development projects.   They told investors that Carter's companies could pay the promised annual returns because Carter, North-Forty, and other entities he controlled built numerous properties.  If one property encountered any delays, the profits from other properties would ensure the returns for

investors.  Although the representations, both orally and in writing, were not exactly the same, the message was consistent – each promissory note investment was low risk and backed by hard assets.  For example, one promissory note contained the following statement:

> Assets are backed by the pooling of properties held primarily in Frisco, McKinney, and Prosper Texas, by North Forty Development LLC. Texas First Financial, LLC provides updates on properties held. Values of said properties are security for this agreement. In the event of default for payment on this agreement, holder is hereby granted authority to file lien(s) against current properties held.

26.     However, Guess sent investors promissory notes issued not by Carter's real estate entities, but by unrelated shell companies owned by Guess.  In fact, when the scheme began, Guess formed two shell companies with names that were nearly identical to the names of Carter's existing real estate companies:

| **Carter's Existing Company** | **Guess's New Shell Company** |
|---|---|
| Texas Cash Cow Investments, Inc. → | Texas Cash Cow, LLC [Texas Cash Cow Delaware] |
| North-Forty Development, LLC → | North Forty Development, LLC [North Forty Delaware] |

27.     As Carter, Guess, and Tilford knew, or were severely reckless in not knowing, Guess's companies held neither title nor security interests in any of Carter's real property or construction projects.  Consequently, the notes that investors received were not "backed by hard assets" as promised, and Carter and his entities were not obligated – at least by the face of the documents – to repay the notes.  Regardless, all investor money was sent to Carter and accounts under Carter's control.

28.     Carter, Guess, and Tilford offered and sold notes bearing the name Texas Cash Cow Delaware from July 2015 through January 2016, raising almost $10 million.  In January 2016, Carter and Guess decided to stop using the Texas Cash Cow name, but continued their fraud by providing notes issued by North Forty Delaware – another Guess shell company.  The only thing that changed was the name – all the misrepresentations and omissions stayed the

same, including that the investments were purportedly backed by "hard assets." Carter, Guess, and Tilford offered and sold notes issued by North Forty Delaware from January to August 2016, raising more than $25 million.

29.     Using investors' funds, Carter purchased and developed properties titled in the names of Relief Defendants Frisco Wade and McKinney Suites.

30.     The use by Carter, Guess, Tilford, Texas First, North-Forty, North Forty Delaware, and Texas Cash Cow Delaware of confusing and deceptively-named shell companies and the repeated false claims of secure investments by Carter, Guess, and Tilford misled investors about the inherent risk and lack of recourse – central and material aspects of investing in Carter's projects.

31.     No Defendant ever filed a registration statement with the Commission in connection with the sale of these promissory notes – which were securities – to investors residing in Texas and other states. Defendants' fundraising efforts targeted investors through use of radio advertising, and resulted in Defendants accepting funds from many unsophisticated and unaccredited investors. Defendants did not undertake to ensure that investors in these projects were accredited or otherwise suited for such investments. In fact, Defendants accepted a significant amount of funds from investors who transferred money directly from their tax-deferred retirement accounts.

32.     Based on an arrangement between Carter and Guess, Carter agreed to pay Texas First a 10-percent commission for each investment of money made by investors in Texas Cash Cow Delaware or North Forty Delaware. Texas First received those commissions for its efforts to advertise via radio commercials, consult and advise investors, and sell promissory notes to raise money for Carter and his companies. Guess and Tilford received compensation out of

funds invested in Texas Cash Cow Delaware or North Forty Delaware by investors.  Guess and Tilford were neither registered as brokers nor associated with a registered broker-dealer when they sold securities in connection with Carter's projects.

## II.      Cease-and-Desist Orders and Target Letters

33.      On February 1, 2016, the United States Attorney's Office for the Eastern District of Texas sent a letter to Guess, informing him that he was under investigation for money laundering, wire fraud, mail fraud, loan fraud, and securities fraud related to his involvement in an investment scheme unrelated to Carter.

34.      On May 16, 2016, the United States Attorney's Office for the Eastern District of Texas sent a letter to Carter, informing him that he was under investigation for money laundering, wire fraud, mail fraud, and securities fraud in connection with Texas Cash Cow and North-Forty.

35.      In August 2016, the TSSB issued a cease-and-desist order related to the other Guess-related investment scheme, ordering Guess and Texas First to, among other things, stop selling securities. That same month, the TSSB executed a search warrant at Texas First's office. Shortly thereafter, Guess stopped raising funds for Carter.

36.      From February through August 2016, Carter, Guess, and Tilford continued to raise money for Carter's projects, but never informed investors about the criminal and regulatory investigations related to Carter, Guess, Texas Cash Cow, or North-Forty.   None of the Defendants told investors that Carter and Guess had received target letters or that they were under investigation for fraud by federal criminal authorities, or that the TSSB issued a cease-and-desist order against Guess and Texas First.  Instead, Carter, Guess, and Tilford continued to tout Carter's background and track record, maintaining that there was little risk in investing in

Carter's projects.   These misrepresentations and omissions were material to investors, significantly altering the total mix of information they considered in determining whether to invest in Carter's projects.  Additionally, in or around November 2016, Carter misrepresented to his commercial real estate broker and at least one potential purchaser that he had not been approached by law enforcement.

**III.     Carter Begins Signing Notes**

37.     Beginning in August 2016, approximately one week after the TSSB issued a cease-and-desist order against Guess and Texas First, Carter began issuing promissory notes under the name North Forty Capital.   However, North Forty Capital was not a registered corporate entity; it was simply a bank account or a d/b/a for Carter disguised as a company.  The North Forty Capital promissory notes offered the same one- or two-year terms as the notes issued by Texas Cash Cow Delaware and North Forty Delaware, and Carter and Tilford continued to tell investors that the notes were backed by hard assets even though North Forty Capital did not own or hold security interests in any real estate developments.

38.     The following chart summarizes the approximate funds raised in each of the offerings:

| Offering Entities | Approx. Offering Dates | Total Funds Raised |
|---|---|---|
| Texas Cash Cow Delaware | July 2015 – January 2016 | $ 9.7 million |
| North Forty Delaware | January 2016 – August 2016 | $25.1 million |
| North Forty Capital | August 2016 – February 2017 | $9.9 million |
| | | **$44.7 million** |

39.     All investor funds raised by Defendants in connection with each of the offerings identified in the preceding chart flowed to accounts under the sole control of Carter, and Carter comingled investor funds, regardless of the entity that issued the note.

**IV.    Misuse of Investor Funds**

40.    Carter, Guess, and Tilford told investors that their money would only be used for business purposes by Texas Cash Cow and North-Forty.  Among other things, they told investors the companies would use the money to purchase real estate, construct buildings, and market them for sale.  Instead, as detailed below, these statements were false and misleading because Carter misappropriated investor funds for his own personal use and to make Ponzi payments to other investors.

### 1.    Personal Expenses

41.    On April 21 and 25, 2016, Carter directly misappropriated more than $1.2 million in investor funds to pay off a personal U.S. Internal Revenue Service tax lien.

42.    Additionally, Carter made personal withdrawals from accounts in which he had comingled investor funds with Texas Cash Cow's and North-Forty's real estate business sales receipts and disbursements.  Since July 2015, Carter has used more than $2 million of comingled funds for his personal use, including approximately:

- More than $1 million related to Double Droptine Ranch;
- $800,000 in cash withdrawals;
- $500,000 transferred to Carter's personal bank accounts;
- $124,000 related to a private jet;
- $39,000 to pay for Dallas Cowboys tickets;
- $5,000 to make contributions to a political campaign; and
- $2,000 to pay education-related expenses for Carter's children.

Additionally, Carter transferred approximately $1 million of the proceeds received from the distressed sale of a North-Forty real estate project to a personal bank account.

43.     After such misappropriations of investor funds, Carter, Guess, and Tilford continued to raise money from investors by representing that their investments would solely be used for Carter's real estate projects.

### 2.     Ponzi Payments

44.     Carter used funds raised from investors in **Texas Cash Cow Delaware, North Forty Delaware, and North Forty Capital** to make approximately $3 million in Ponzi payments to preexisting investors. Starting in October 2015, Carter made Ponzi payments to cover quarterly interest payments that were due and owing to investors.  Subsequent Ponzi payments, made through January 2017, covered quarterly interest payments, as well as principal repayments.

45.     To make the Ponzi payments, Carter typically transferred investor funds from bank accounts that he controlled (which contained investment deposits from newer and earlier investors) to Texas Cash Cow Delaware and Texas First bank accounts controlled by Guess, who then transferred the funds directly to investors.

46.     In a few instances, including during the North Forty Capital portion of the fraud (August 2016 to January 2017), Carter directly transferred investor funds from bank accounts that he controlled to previous investors to make quarterly interest payments and to return principal.  In all cases, Carter knew that he was using new investment funds to pay preexisting investors.

47.     Carter also made more than $280,000 in Ponzi payments in connection with an interpleader action filed by North-Forty, Texas Cash Cow, and Carter after Guess was indicted and arrested in December 2016.  In connection with the interpleader action, Carter deposited approximately $286,000 into the Court's registry in March 2017, claiming the deposited funds constituted quarterly interest payments due and owing to existing investors in promissory notes issued by Texas Cash Cow Delaware and North Forty Delaware.  Carter's transfer to the Court's

registry, however, was comprised solely of investor funds – not revenues from his real estate business.

**V.      Status of Carter's Projects**

48.      As of September 2018, promissory note investors were owed approximately $45 million, including approximately $38 million in principal and $7 million in interest.  Carter and his real estate companies lack sufficient funds to repay either the large amounts due and owing to investors or to pay the outstanding construction debts. The property-holding entities that Carter controlled (including Frisco Wade and McKinney Suites) appear to have only two active commercial construction projects (and a few smaller residential projects related to Christian Custom Homes), and Carter has continued to misuse investor funds and make preferential payments.  For example, 2018 bank records reveal that Carter transferred an additional $300,000 to Double Droptine Ranch from North-Forty funds.  Further, some promissory-note investors have sued Carter and some of his related entities, and Carter has also used investor funds to pay for litigation expenses and personal legal representation.

49.      Additionally, Carter has depleted the real property assets that are potentially recoverable for the benefit of investors, having transferred title to purportedly one of his most valuable real estate projects in settlement of a construction lawsuit filed by a former general contractor, who had filed multiple liens on the properties totaling approximately $6 million. Threatened with lien foreclosures, Carter exchanged a commercial real estate property in progress, the "Prosper Business Park," for almost $10 million cash and the release of the liens.

50.      The $10 million in net proceeds appear to be significantly below market value. Carter represented to investors that the Prosper Business Park project had a land value of more than $16 million and a completed value of $75 million. And, the Commission was made aware

of a $22 million offer for the Prosper Business Park in "as-is" condition.  But faced with a severe cash shortfall, Carter signed away the property to the detriment of investors.

51.     Carter's continuing cash deficiencies have severely delayed or halted the completion of ongoing real estate development projects.  To solve his cash flow problem, Carter took out a $32 million loan secured by the only two active commercial real estate developments.  The two now-encumbered projects, owned by Frisco Wade and McKinney Suites, were developed using investor funds.

52.     In recent months, Carter has been unable to sell certain completed (or substantially complete) properties built using investor funds, because title companies will not issue title policies, purportedly as a result of Carter's arrest and related uncertainties.  As a result, and given the general inability to carry on business, on January 16, 2019 Carter transferred control of several entities, including North-Forty and all of the Relief Defendants, to a third party who has informed the Commission of its intention to take the companies into bankruptcy to facilitate restructuring.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

#### (against all Defendants)

53.     The Commission repeats and re-alleges Paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54.     By engaging in the conduct described herein, Carter, North-Forty, and North Forty Capital, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails, knowingly or with severe recklessness, employed devices, schemes, or artifices to defraud.

55.     By engaging in the conduct described herein, Carter, Guess, Tilford, North-Forty, North Forty Capital, North Forty Delaware, Texas Cash Cow Delaware and Texas First, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails, and at least negligently, obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56.     By engaging in the conduct described herein, Carter, North-Forty, and North Forty Capital, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails, and at least negligently, engaged in transactions, practices, and/or courses of business which operate as a fraud or deceit upon purchasers, prospective purchasers, and other persons.

57.     By engaging in this conduct, Carter, Guess, Tilford, North-Forty, North Forty Capital, North Forty Delaware, Texas Cash Cow Delaware and Texas First violated, and unless enjoined will continue to violate, Section 17(a)(2).

58.     By engaging in this conduct, Carter, North-Forty, and North Forty Capital violated, and unless enjoined will continue to violate, Sections 17(a)(1) and (3).

## SECOND CLAIM
### Section 10(b) [15 U.S.C. § 78j(b)]
### and Rule 10b-5 [17 C.F.R. § 240.10b-5]

### (against all Defendants)

59.     The Commission repeats and re-alleges Paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60.     By engaging in the conduct described herein, Defendants Carter, North-Forty, and North Forty Capital, directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or with severe recklessness:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities and upon other persons.

61.     By engaging in the conduct described herein, Guess, Tilford, North Forty Delaware, Texas Cash Cow Delaware, and Texas First directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or with severe recklessness:

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

62.     By engaging in this conduct, Defendants Carter, Guess, Tilford, North-Forty, North Forty Capital, North Forty Delaware, Texas Cash Cow Delaware and Texas First violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. §§ 240.10b-5].

63.     By engaging in this conduct, Defendants Carter, North-Forty, and North Forty Capital violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rules 10b-5(a) and 10b-5(c) [17 C.F.R. §§ 240.10b-5].

**THIRD CLAIM**
**Sections 5(a) and 5(c) of the Securities Act**
**[15 U.S.C. §§ 77e(a) & (c)]**

**(against all Defendants)**

64.     The Commission repeats and re-alleges Paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.     By engaging in the conduct described herein, Carter, Guess, Tilford, North-Forty, North Forty Capital, North Forty Delaware, Texas Cash Cow Delaware, and Texas First, directly or indirectly, singly or in concert with others, (i) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements, or otherwise, securities as to which no registration statement was in effect; and/or (iii) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements, or otherwise, securities as to which no registration statement had been filed.

66.     By engaging in this conduct, Carter, Guess, Tilford, North-Forty, North Forty Capital, North Forty Delaware, Texas Cash Cow Delaware, and Texas First have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## FOURTH CLAIM
### Section 15(a) of the Exchange Act
### [15 U.S.C. § 78o(a)]

### (against Guess and Tilford)

67.     The Commission repeats and re-alleges Paragraphs 1 through 66 of the Complaint as if fully set forth herein.

68.     By engaging in the conduct described herein, Guess and Tilford, while engaged in the business of effecting transactions in securities for the account(s) of others, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered with the Commission as a broker or dealer or as an associated person of a registered broker or dealer, in accordance with Section 15(a) of the Exchange Act.

69.     By engaging in this conduct, Guess and Tilford have violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## FIFTH CLAIM
### Equitable claim against Relief Defendants

### (against Relief Defendants Frisco Wade, McKinney Suites, Christian Custom Homes, and Double Droptine Ranch)

70.     The Commission repeats and re-alleges Paragraphs 1 through 69 of the Complaint as if fully set forth herein.

71.     Frisco Wade, McKinney Suites, Christian Custom Homes, and Double Droptine Ranch, directly or indirectly, received funds or assets, or benefitted from the use of funds or assets, which are proceeds of the unlawful activity alleged above. They received funds, assets, and/or property, directly or indirectly, from Defendants that were obtained as a result of the securities law violations described herein.

72.     Frisco Wade, McKinney Suites, Christian Custom Homes, and Double Droptine Ranch have no legitimate claims to such funds, assets, and/or property received, or from which they otherwise benefitted, directly or indirectly.

73.     The Commission is entitled to an order, pursuant to common law equitable principles – such as disgorgement, unjust enrichment, and constructive trust – and pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], requiring Frisco Wade, McKinney Suites, Christian Custom Homes, and Double Droptine Ranch to disgorge all of the funds, assets, or property they received, either directly or indirectly, from Defendants that were derived from the illegal activities described above.

## REQUEST FOR RELIEF

For these reasons, the Commission respectfully requests that this Court enter a final judgment:

1. permanently enjoining Phillip Michael Carter, individually and d/b/a North Forty Development Capital Account, from:

   a. violating, directly or indirectly, Sections 5(a), 5(c), 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder; and

   b. directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own account.

2. permanently enjoining Bobby Eugene Guess from:

   a. violating, directly or indirectly, Sections 5(a), 5(c), and 17(a)(2) of the Securities Act and Sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5(b) thereunder; and

   b. directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own account.

3.  permanently enjoining **Richard Gregory** Tilford from:

    a.  violating, directly or indirectly, Sections 5(a), 5(c), and 17(a)(2) of the Securities Act and Sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5(b) thereunder; and

    b.  directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent them from purchasing or selling securities for their own account.

4.  permanently enjoining North-Forty Development, LLC from:

    a.  violating, directly or indirectly, Sections 5(a), 5(c), 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder; and

    b.  directly or indirectly, including, but not limited to, through any entity it owns or controls, participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent it from purchasing or selling securities for its own account.

5.  permanently enjoining North Forty Development LLC from:

    a.  violating, directly or indirectly, Sections 5(a), 5(c), and 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder; and

    b.  directly or indirectly, including, but not limited to, through any entity it owns or controls, participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent it from purchasing or selling securities for its own account.

6.  permanently enjoining Texas Cash Cow, LLC f/k/a Texas Cash Cow Investments, LLC from:

    a.  violating, directly or indirectly, Sections 5(a), 5(c), and 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder; and

    b.  directly or indirectly, including, but not limited to, through any entity it owns or controls, participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent it from purchasing or selling securities for its own account.

7.  permanently enjoining Texas First Financial, LLC from:

    a.  violating, directly or indirectly, Sections 5(a), 5(c), and 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder; and

    b.  directly or indirectly, including, but not limited to, through any entity it owns or controls, participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent it from purchasing or selling securities for its own account.

8.  ordering all Defendants and Relief Defendants to disgorge ill-gotten gains and benefits obtained or to which they were not otherwise entitled, as a result of the violations alleged herein, plus prejudgment interest on those amounts;

9.  ordering all Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

10.  granting such additional relief as the Court deems just, appropriate, and equitable.


DATED:  January 25, 2019                  Respectfully submitted,

                                        Matthew J. Gulde
                                        Illinois Bar No. 6272325
                                        B. David Fraser
                                        Texas Bar No. 24012654
                                        SECURITIES AND EXCHANGE COMMISSION
                                        Burnett Plaza, Suite 1900
                                        801 Cherry St., Unit #18
                                        Fort Worth, TX 76102-6882
                                        (817) 978-3821
                                        (817) 978-4927 (fax)
                                        guldem@sec.gov

                                        ATTORNEYS FOR PLAINTIFF
                                        SECURITIES AND EXCHANGE COMMISSION